IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CHRISTINE MOSLEY**                                                             **PLAINTIFF**

**v.**                                     **Case No. 4:24-cv-00807-KGB**

**COMPASS GROUP USA, INC.**
**a/k/a CROTHALL HEALTHCARE**                                          **DEFENDANT**

## ORDER

Before the Court are defendant Compass Group USA, Inc.'s ("Compass") motion to dismiss and compel arbitration (Dkt. No. 15) and motion for entry of order on motion to dismiss and to compel arbitration (Dkt. No. 19). Plaintiff Christine Mosley filed an untimely response to the motions (Dkt. No. 21), and Compass replied (Dkt. No. 22).

### I.    Background

On September 23, 2024, Mosley filed this case (Dkt. No. 1). On September 25, 2024, Mosley filed an amended complaint (Dkt. No. 3). In Mosley's amended complaint, Mosley alleges that Compass unlawfully subjected her to retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Dkt. No. 3). Mosley also alleges related state law claims under Arkansas Code Annotated § 16-56-105 and § 18-42-107 *et seq.* (*Id.*).[1]

Compass filed its motion to dismiss and to compel arbitration, arguing that Mosley's claims are within the scope of a valid and enforceable arbitration agreement between Mosley and Compass and that Mosley's complaint should therefore be dismissed in order to allow the parties

---

[1] The amended complaint also purports to be brought pursuant to the Fourteenth Amendment of the United States Constitution, although it is unclear on the face of the amended complaint on what basis such a claim would rest against the named defendant (Dkt. No. 3, at 1–2).

to proceed with arbitration of her claims (Dkt. No. 15). Compass then filed its motion for entry of order on motion to dismiss and to compel arbitration, arguing that Mosley had failed to respond to their motion to dismiss and to compel arbitration and that the Court should grant their motion to dismiss and to compel arbitration (Dkt. No. 19). Mosley belatedly responded to Compass's motions (Dkt. No. 21). Compass replied (Dkt. No. 22).

Compass then filed a motion to stay and extend scheduling order deadlines and status reports (Dkt. No. 23). The Court then granted the motion, staying and extending all remaining deadlines in the Court's Final Scheduling Order pending the Court's ruling on the motion to dismiss and to compel arbitration (Dkt. No. 24). The Court now turns to the pending motions.

## II.      Factual Allegations

In her amended complaint, Mosley alleges that she began employment with Compass, through its subsidiary, Crothall Healthcare ("Crothall"), as a housekeeper in 2007 (Dkt. No. 3, ¶ 6). Crothall does business in and at the University of Arkansas for Medical Sciences ("UAMS") College of Medicine at 4301 W. Markham, Little Rock, Arkansas 72205 (*Id.*, ¶ 3). In 2019, Mosley was promoted to Night Operations Manager (*Id.*, ¶ 11). During her 15 years of employment with Compass, Mosley avers that she had no write-ups or disciplinary actions and that, in fact, she received "a plethora of recognitions and awards, including Emergency Department Employee of the Year 2012 and the GEM Award of the same year" (*Id.*, ¶¶ 9, 12).

However, on July 4, 2022, Mosley avers that she experienced aggressive behavior from a subordinate, Selicia Polk, who shouted profanities at Mosley and threw a utility cart at her (*Id.*, ¶ 14). The incident prompted Mosley to call for police assistance (*Id.*). On July 8, 2022, when Mosley reported the incident to Environmental Director Joe Freeman ("Director Freeman"), he allegedly laughed, told Mosley that she was paranoid, and took no further action (*Id.*, ¶ 15). On

July 15, 2022, Director Freeman gave Mosley her first ever disciplinary write-up, allegedly for the incident in which she was victimized by Polk (*Id.*, ¶ 17).

On October 16, 2022, Mosley avers that she received a statement from a subordinate housekeeper, Nakia Onukwude, regarding sexual harassment allegations against Director Freeman dating back to early October 2022 (*Id.*, ¶ 18).  Mosley turned in a copy of Onukwude's statement to human resources on November 16, 2022 (*Id.*).  On that same day, Crothall's management team had a round table meeting to discuss scheduling when Mosley informed Director Freeman that several employees were taunting her "about being moved from her designated area which would cause her difficulties in completing her tasks during her shift" (*Id.*, ¶ 19).  Director Freeman allegedly became extremely angry and aggressive towards Mosley; Director Freeman allegedly began shouting, pointing his finger at Mosley, and shaking his arms toward her (*Id.*).  Mosley then allegedly retreated into a coworker's cubicle while hearing other employees shout "NO!!!" at Director Freeman, with objects being thrown and crashing to the floor (*Id.*).  Within one minute, Director Freeman allegedly came into the cubicle and told Mosley, "Your best bet is for you to be quiet!" (*Id.*).  That same evening, Director Freeman allegedly stormed into the manager's office and asked for the badge of a recently hired human resources staff member (*Id.*, ¶ 21).  Director Freeman allegedly called the police to escort the staff member off the premises (*Id.*).

Mosley avers that she later learned that Director Freeman had shoved two managers, Shawnette Walker and Toshecka Turner, when he lost control during the round table meeting and tried to attack Mosley (*Id.*, ¶ 20).  Crothall allegedly did not discipline Director Freeman for his misconduct on November 16, 2022 (*Id.*, ¶ 21).

On December 7, 2022, given that there had been no resolution from human resources regarding Ms. Onukwube's sexual harassment allegations, Mosley gave a copy of Ms.

Onukwube's statement to Regional Director Steven Willis ("Regional Director Willis") (*Id.*, ¶ 22). Within two hours, Onukwube allegedly contacted Mosley questioning why Mosley turned in her statement to Regional Director Willis, which indicated to Mosley that Regional Director Willis had purportedly violated Crothall's confidentiality policy (*Id.*, ¶ 23).  Also on December 7, 2022, Mosley avers that she spoke to UAMS Director James Bishop ("UAMS Director Bishop"), who advised Mosley to file a complaint with Crothall's human resources department (*Id.*, ¶ 24).

The next day, on December 8, 2022, Mosley was allegedly called into Regional Director Willis's office and informed that she was suspended pending investigation due to her conversation with UAMS Director Bishop (*Id.*, ¶ 25).  On December 13, 2022, Mosley avers that she received a call from Malia Price, Crothall HR Business Partner, who informed Mosley that she had been relieved of employment with Crothall and that Mosley should apply for unemployment benefits because "the company would not fight it" (*Id.*, ¶ 26).  A letter dated December 14, 2022, was addressed to Mosley, stating that "[a] business decision has been made by Crothall and Client leadership to remove you from your position as Operations Manager at University of Arkansas Medical Science" and that Mosley was eligible for unemployment benefits because the job elimination was involuntary (*Id.*).

On August 14, 2023, Mosley applied for an evening environmental services position for which she had received a notification of vacancy (*Id.*, ¶ 29).  She received a response that the position was closed and that the employer was no longer accepting applications, though the same or similar positions were posted for Little Rock, Arkansas, on several dates after receiving the vacant job announcement (*Id.*).  Mosley has not been considered for the vacant position as of the date of her amended complaint (*Id.*).

4

Mosley filed a United States Equal Employment Opportunity Commission ("EEOC") charge of discrimination on September 25, 2023, and was issued a right to sue letter on June 27, 2024 (*Id.*, ¶ 31).  Mosley filed the instant lawsuit on September 23, 2024 (Dkt. No. 1).

### III.    Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 *et seq.*, provides that the Court shall direct parties to arbitration upon satisfaction that "the issue involved in such suit or proceeding is referable to arbitration under a written arbitration agreement."  *Id.* § 3.  Arbitrability is thus a contractual issue.  *BSI Grp. LLC v. EZBanc Corp*, 122 F.4th 712, 715 (8th Cir. 2024).  As such, "[w]hen a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate, and, if so, then what their arbitration agreement covered."  *Id.*  The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate.  *Id.* at 715.

The standard of review is akin to the summary judgment standard.  *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 815 (E.D. Ark. 2019).  Thus, the evidence is viewed in the light most favorable to the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact in dispute for trial).  The Court's task is to "look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause."  *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023) (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)).

The Court's ruling turns on "the presence or absence of a material issue of factual dispute." *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004) (quoting *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue" as to arbitrability. *See Johnson Reg'l Med. Center v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Loc. 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient . . . rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (quoting *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)). Thus, if there is a "'material issue of fact on whether the parties had an agreement to arbitrate,' the issue must be remanded for trial." *BSI Grp.*, 122 F.4th at 715 (quoting *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021)). On the other hand, the FAA requires that any doubts as to arbitrability be resolved in favor of arbitration. *H&T Fair Hills*, 76 F.4th at 1100.

## IV.    Discussion

Compass alleges that Mosley's claims are covered by the arbitration agreement between Mosley and Compass (Dkt. No. 16, at 6–7). Compass attached the arbitration agreement to its motion (Dkt. No. 16-1).

The arbitration agreement by its terms applies to "all disputes that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation" (*Id.*, ¶ 2). This expressly includes "any claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil

Rights Act of 1964, as amended, or any other state or federal law or regulation" (*Id.*, ¶ 3). The "only exceptions to binding arbitration" are "claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under state workers' compensation laws, claims for unemployment insurance, or other claims that are not subject to arbitration under current law" (*Id.*). The agreement is electronically signed by Mosley and dated March 19, 2019 (*Id.*).

In Mosley's untimely response in opposition to Compass's motions, Mosley does not dispute the existence of the arbitration agreement, but Mosley summarily "disputes that she knowingly and voluntarily assented to any arbitration provision" and argues that the terms are procedurally and substantively unconscionable (Dkt. No. 21, at 3). Other than stating that she "disputes that she knowingly and voluntarily assented" to the provision, Mosley provides no sworn affidavit—or any other evidence—which supports Mosley's contention that she did not voluntarily assent to the arbitration agreement (*Id.*). Similarly, despite Mosley's bare argument that the terms are unconscionable, Mosley provides no evidence that the arbitration agreement was "presented as a condition of continued employment without meaningful opportunity to negotiate," and Mosley does not explain how the "provisions . . . are one sided in favor of Defendant [and] impose excessive costs on Plaintiff . . ." (*Id.*).

Taking the record evidence in the light most favorable to Mosley, the Court concludes that no reasonable jury could find that Mosley did not knowingly and voluntarily assent to the arbitration agreement, as there is no evidence to support such a finding. The Court also finds that the arbitration agreement is not unconscionable. Contrary to Mosley's argument that the provisions are "one-sided in favor of Defendant" (*Id.*), the arbitration agreement's terms apply to both Mosley and Compass (Dkt. No. 16-1). Similarly, the Court is unable to identify what

"excessive cost" and "limit[ed] statutory remedies" Mosley asserts are placed on her in the arbitration agreement (Dkt. No. 21, at 3). The only limitation in the arbitration agreement is a class action waiver—which does not appear to be relevant in this case—and Mosley was free to opt out of that provision (Dkt. No. 16-1). Mosley also presents no evidence to support her argument that the contract was "presented as a condition of continued employment without meaningful opportunity to negotiate" (Dkt. No. 21, at 3). Therefore, based on the record before the Court, the Court finds that there is a valid and enforceable arbitration agreement between the parties.

Because Mosley signed the arbitration agreement and the text of the arbitration agreement covers Mosley's claims in this case, the only question left for the Court to decide is whether any of Mosley's claims are excluded from arbitration by current law. Relevant here, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02, provides that no predispute arbitration agreement or predispute joint-action waiver "shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." *Id.* § 402(a). A "sexual harassment dispute" is defined to mean "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

Compass argues that the EFAA does not apply to Mosley's claims because her claims do not relate to sexual harassment that she personally experienced, but rather her claims relate only to sexual harassment allegedly experienced by a third party (Dkt. No. 16, at 7–8). There is no binding authority on this issue. However, other district courts have held that the EFAA does not apply to retaliation claims where the underlying sexual harassment was directed at a third party and was not personally experienced by the plaintiff. *See Mitchell v. Raymond James & Assocs.,*

*Inc.*, Case No. 8:23-cv-02341-VMC-TGW, 2024 WL 4486565, at 11 (M.D. Fla. Aug. 23, 2024), *R. & R. adopted*, Case No. 8:23-cv-02341-VMC-TGW, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024); *Newman v. Ambry Genetics Corp.*, Case No. 2:24-cv-00887-BHH-MGB, 2024 WL 3811606 (D.S.C. Aug. 14, 2024), *recons. denied*, Case No. 2:24-cv-00887-BHH, 2024 WL 4553224 (D.S.C. Oct. 23, 2024). In this case, the sexual harassment alleged in Mosley's amended complaint appears to have been experienced only by Onukwude, not Mosley.

Mosley summarily argues that "the claims asserted involve statutory rights and remedies that cannot be waived or restricted by private arbitration without clear and unmistakable evidence" but provides no further explanation of why the rights cannot be waived by arbitration (Dkt. No. 21, at 3). The Court finds Mosley's bare argument unconvincing. The Court finds that, based on the holdings in *Mitchell* and *Newman*, the EFAA does not apply to Mosley's claims. Therefore, Mosley and Compass have a valid and enforceable arbitration agreement which covers Mosley's claims in the instant lawsuit.

The Court now turns to the issue of whether dismissal is appropriate. In *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024), the Supreme Court held that dismissal is inappropriate under § 3 of the FAA where a party requests a stay pending arbitration of an arbitrable dispute. Here, Compass requested—and the Court granted—a stay in this case until the Court ruled on the pending motions to compel arbitration (Dkt. Nos. 23; 24). However, neither party requested a stay of this case pending arbitration, and Compass's motion specifically prays for dismissal (Dkt. No. 15). As Compass notes in its motion, other courts have found that *Spizzirri* does not apply where neither party requests a stay pending arbitration (Dkt. No. 16, at 9, n.6). *See Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025); *Gavette v. United Wholesale Mortg., LLC*, Case No. 24-1557, 2025 WL 318224, at 3 (6th Cir. Jan. 28, 2025); *Nat'l Cas. Co. v. Cont'l Ins. Co.*, 121

F.4th 1151, 153 (7th Cir. 2024). As such, the Court determines that dismissal of Mosley's amended complaint is appropriate here.

For these reasons, the Court grants Compass's motion to dismiss and compel arbitration (Dkt. No. 15). The Court denies as moot Compass's motion to dismiss and compel arbitration as providing the relief requested in Compass's motion (Dkt. No. 19). The Court dismisses without prejudice Mosley's amended complaint. Judgment will be entered accordingly.

It is so ordered this 22nd day of June, 2026.

_____
Kristine G. Baker
Chief United States District Judge